*ment of the Virgin Islands,* 562 F.2d 908, 911 (3d Cir.1977)).

 Rule 60(b)(6), however, does not confer on the courts a "standardless residual discretionary power to set aside judgments." *Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987) (holding that judgment based on incorrect facts did not constitute sufficient ground for setting aside judgment). Such relief is only available upon a showing of "extraordinary circumstances." *Ackermann v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 213–14, 95 L.Ed. 207 (1950) (finding no extraordinary circumstances in that decision not to appeal was a "free, calculated, deliberate choice"); *Moolenaar v. Government of the Virgin Islands,* 822 F.2d at 1347. A motion under Rule 60(b)(6) "must be fully substantiated by adequate proof and its exceptional character must be clearly established." *FDIC v. Alker,* 234 F.2d 113, 116 (3d Cir. 1956).

To determine whether extraordinary circumstances exist, a full hearing must be held by the trial court, the parties must be given the opportunity to produce their witnesses, and the Territorial Court must render findings of fact and conclusions of law. *See Alker,* 234 F.2d at 117 (directing judge to hold a full hearing to determine existence of extraordinary circumstances). At such hearing, reasons justifying relief under clauses (1), (2), or (3) of Rule 60—mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud—may not be considered. See *Stradley v. Cortez,* 518 F.2d 488, 493–94 (3d Cir.1975); *Moolenaar,* 822 F.2d at 1346 n. 5. Rule 60(b)(6) may not be used as a means to circumvent the time limitations of 60(b)(1)–(3); it is only available upon a demonstration of extraordinary circumstances, and even only then for relief based upon "any other reason" than one which would justify relief under 60(b)(1)–(5). *Stradley,* 518 F.2d at 493–94.

### CONCLUSION

The Territorial Court denied appellant's motion for relief from final judgment of paternity and child support on the ground that appellant was collaterally estopped from contesting the issue. Having found the court's ruling to be in error, the order denying relief is therefore vacated and the matter remanded for consideration as a motion for relief from final judgment under Rule 60(b)(6) in accordance with this opinion. A separate order follows.

### ORDER OF THE COURT

**AND NOW,** this 2nd day of April 1997, having considered the arguments and submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

**IT IS ORDERED AND ADJUDGED** that the December 13, 1995 ruling of the Territorial Court is **VACATED** and **REMANDED.**

Charles MAIN,

v.

### MONTGOMERY COUNTY, MARYLAND.

Civ. No. Y–96–1176.

United States District Court, D. Maryland.

April 15, 1997.

John B. Walsh, Jr., William J. Chen, Jr., Chen, Walsh, Tecler & McCabe, L.L.P., Rockville, MD, for Plaintiff.

Charles W. Thompson, Jr., Joann Robertson, Bruce Sherman, Rockville, MD, for Defendant.

### MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This suit arises from a dispute over whether a former Montgomery County employee who is receiving retirement benefits can apply for a change of retirement status to collect disability retirement benefits for a service-connected injury that manifested its severity after retirement.

### I.

Charles Main ("Main") is a former full-time fireman for Montgomery County, Maryland (the "County"). On June 15, 1993, Main applied for an early retirement to commence on July 1, 1993. The next day, June 16, 1993, he injured his left knee on duty during a gas explosion while responding to an emergency. He never returned to work after the injury, and his early retirement became effective on July 1, 1993. Sometime later he became aware of the severity of his injury and underwent two operations.

On May 19, 1995, Main inquired of the Montgomery County Chief Administrative Officer as to the procedure for obtaining consideration of a change in his retirement status from early retirement to service-connected disability retirement. The Chief Administrative Officer informed Main that there was no procedure for changing retirement status because an application for disability retirement must be made prior to retirement. On July 21, 1995, Main noted an appeal with the Merit System Protection Board. The Board concluded that the Chief Administrative Officer had properly interpreted the Montgomery County Code.

Main then filed the pending action in federal court seeking declaratory and injunctive relief for violation of his due process rights under the federal and state constitutions. The parties have filed cross Motions for Summary Judgment.

### II.

The Fourth Circuit recently ruled that a current county employee had "a property interest in her potential eligibility for disability retirement benefits, whether or not she ultimately prevailed on the merits." *Mallette v. Arlington County Employees' Supplemental Retirement Sys. II,* 91 F.3d 630 (4th Cir.1996). Accordingly, if Main had been a current county employee when he tried to apply for disability retirement benefits he would have had a property interest requiring the County to afford him due process protections and consider the merits of his application. Main, however, was not a current county employee when he applied for disability retirement and the parties disagree over whether *Mallette* should be extended to former employees.

The Montgomery County Employees' Retirement System provision for service-connected disability retirement provides in part:

A member may be retired on a service-connected disability if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate result of an accident occurring, or an occupational disease incurred or condition aggravated while in the actual performance of duty; that the incapacity is not due to willful negligence, and the incapacity is likely to be permanent. . . .

(2) The member is unable to perform the duties of the occupational classification to which assigned at the time disability occurred or a position of comparable status within the same department, if qualified.

Montgomery County Code § 33–43(e). The term "member" is defined as "[a]n employee or official of the county government or of a participating agency or political subdivision who is contributing to this retirement system." Montgomery County Code § 33–35. Reading these two provisions together narrowly in isolation, the County concluded that only current employees who are contributing to the retirement system are eligible to apply for disability benefits.

█ The Maryland Court of Appeals has specifically recognized that "Montgomery County's system of retirement benefits is benevolent in purpose. . . ." *Montgomery County v. Buckman*, 333 Md. 516, 529, 636 A.2d 448 (1994). Accordingly, the language of the Montgomery County Code relating to the retirement system should be liberally construed to effect its benevolent purpose. *See, e.g., State ex rel. Murray v. Riley*, 44 Del. 505, 62 A.2d 236, 239 (1948); *Smith v. Consolidated Police & Firemen's Pension Fund Comm'n*, 149 N.J.Super. 229, 373 A.2d 685, 686 (Ct.App.Div.1977), *cert. denied*, 75 N.J. 8, 379 A.2d 239 (1977); *Hahn v. Police Pension Fund of Woodstock*, 138 Ill.App.3d 206, 92 Ill.Dec. 825, 829, 485 N.E.2d 871, 875 (1985) ("[P]olice and firemen's pensions are to be liberally construed in favor of those to be benefitted."). This is particularly true with service-connected disability retirement benefits which are designed to compensate employees for injuries and disabilities sustained on the job. ·

Although the definition of "member" would seem to suggest it is limited to current employees, the term is used throughout the provision on disability retirement to refer to current and former employees. For example, the subsection on medical reexamination of persons receiving disability retirement requires "a member receiving disability pension payments" to submit to periodic physical exams. Montgomery County Code § 33–43(f). The subsection also provides that "a member" may have his pension payment reduced or discontinued if he does not submit to periodic physical exams. Montgomery County Code § 33–43(f). Similarly, the subsection on adjustment or cessation of disability pension payments refers to "a member receiving service-connected disability pension payments" in several instances. Montgomery County Code § 33–43(i). The strict construction the County seeks to impose on the term "member" cannot be supported in these sections where the term is used to refer to persons receiving disability retirement benefits.

Another difficulty with the County's attempt to narrowly construe the term "member" to encompass only current members is that section 33–35 includes a definition for "retired member" as "any member who is receiving retirement benefits." Montgomery County Code § 33–35. This suggests that the drafters did not understand the term "member" to be limited solely to current employees to the exclusion of former employees who are receiving retirement benefits.[1] *See Buckman*, 333 Md. at 523, 636 A.2d 448 ("The cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature.").

Given the ambiguity in the language of the Montgomery County Employees' Retirement System and lack of precedent in Maryland,

---

1. An analysis of the interrelation between definitions indicates that the drafters were not as precise in defining terms as the County would suggest by its strict construction of the term "member." The term "member" refers to "[a]n employee or official of the county government." Montgomery County Code § 33–35. The term "employee" encompasses "[a]ny eligible elected or appointed official and any full-time or career part-time employee of the county." Montgomery County Code § 33–35. Thus, including the term "official" in the definition of "member" is surplusage because the term "employee" by definition includes "official."

the Court looks to the experience of other jurisdictions. In *Miller v. City of Wilmington,* 285 A.2d 443 (Del.Ch.1971), *aff'd,* 293 A.2d 574 (Del.1972), the Delaware Chancery Court was presented with a police officer who resigned unaware that an injury he sustained while riding a police motorcycle in the line of duty was a permanent partially disabling injury. The Trustees of the Police Pension Fund refused to consider the officer's application for disability retirement in part because he was no longer a member of the police department. The Chancery Court first rejected the argument that the statute only allowed current employees to apply. "The ordinance does not by its terms preclude the application of one not a member of the Department, and should not be so construed as that construction would prevent the application of an employee who has been wrongfully discharged subsequent to a work-related injury." *Id.* at 445–46. Next, the Chancery Court rejected the argument that the officer forfeited or waived his right to the pension by resigning without expressly reserving his right to the disability pension. "Because of the remedial purpose of such statutes, because of the fact that they authorize pensions to prospective policemen as an inducement to their employment and because the pensions are financed by contributions from the proposed pensioners themselves, a forfeiture or waiver of pension rights should be found only where clearly intended by the parties. There is no clear expression of such waiver here, the plaintiff being unaware at the time of his resignation that he had any right to a pension." *Id.* at 446.

Another instructive case is *State ex rel. Johnson v. Funkhouser,* 52 Wash.2d 370, 325 P.2d 297 (1958), in which a policeman sought mandamus relief from the decision of the Civil Service Board denying him disability retirement benefits for a service-connected injury. The trial court denied the policeman's petition for a writ of mandamus on the ground that he was not a member of the police department when he applied for permanent disability benefits. *Id.* 325 P.2d at 298. The Washington Supreme Court re-

jected the trial court's decision, holding that service-connected disability pension rights accrue at the time an injury occurs. "An application for a disability pension serves only as the means by which the right is brought before the pension tribunal for adjudication upon its merits. When one's contract of employment includes service connected disability rights, those rights become vested at the instant the employee is injured in the course of his employment. The statute does not require that application for disability benefits must be made while the applicant is a member of the police department." *Id.* 325 P.2d at 299.

In the present case, the ambiguous language of the Montgomery County Code regarding eligibility to apply for service-connected disability retirement should be liberally construed to effectuate the benevolent purpose for which it was enacted. The term "member" should not be limited to current employees. Main was injured in a service-connected accident, and, thus, his right to service-connected disability retirement benefits accrued when he was injured on June 16, 1993 while he was a current employee. The fact that he retired before the severity and permanence of the injury manifested itself should not work as a forfeiture or waiver of his vested right to service-connected disability retirement benefits. Accordingly, the due process clause of the United States Constitution[2] requires the County to consider the merits of Main's application for a disability retirement as it would any current employee.

Based upon the foregoing analysis, summary judgment will be granted in favor of the Plaintiff and the County must consider the merits of Main's claim for disability retirement benefits. The Court expresses no opinion as to the merits of Main's claim for disability retirement benefits.

### ORDER

In accordance with the attached Memorandum, it is this day of April 1997, by the

---

**2.** The Court expresses no opinion as to whether the Maryland Constitution extends any due process protections beyond those guaranteed by the

United States Constitution, because Main was not even afforded the due process protections guaranteed by the United States Constitution.

United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That Defendant's Motion for Summary Judgment BE, and the same IS, hereby DENIED; and

3. That Judgment BE, and the same IS, hereby ENTERED in favor of Plaintiff; and

4. That a copy of this Memorandum and Order be mailed to counsel for the parties.